## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **(1) DESTINY HOLLAND, as the Special** | ) | |
| **Administrator of the Estate of Ralph Hal** | ) | |
| **Holland, Jr., Deceased,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | Case No. 14-CV-641-CVE-TLW |
| **v.** | ) | |
| | ) | |
| **(1) STANLEY GLANZ, SHERIFF OF TULSA** | ) | |
| **COUNTY, in His Individual and Official** | ) | **JURY TRIAL DEMANDED** |
| **Capacities;** | ) | |
| **(2) ARMOR CORRECTIONAL HEALTH** | ) | **ATTORNEY'S LIEN CLAIMED** |
| **SERVICES, INC.;** | ) | |
| **(3) DOES I through V,** | ) | |
| | ) | |
| **Defendants.** | ) | |

### FIRST AMENDMED COMPLAINT

**COMES NOW** the Plaintiff, Destiny Holland (Plaintiff), as the Special Administrator of

the Estate of Ralph Hal Holland, Jr., deceased, and for her causes of action against the

Defendants, alleges and states as follows:

### FACTUAL ALLEGATIONS

1.      On or about November 30, 2013 and/or December 1, 2013, Ralph Hal Holland, Jr.

("Mr. Holland") died after hanging himself in a jail cell.  He was just forty-eight (48) years old.

Prior to his death, Mr. Holland was mentally challenged, severely depressed and under medical

care for pain and depression.

2.      Mr. Holland was arrested on or about November 1, 2013, and was detained at the

David L. Moss Criminal Justice Center (hereinafter "Tulsa County Jail") awaiting pre-trial for

misdemeanor charges.  Destiny Holland, Mr. Holland's daughter, informed both the arresting

officers and officials at Tulsa County Jail that Mr. Holland was suicidal.  However, Mr. Holland

1

was never placed on suicide watch. Mr. Holland had been prescribed blood pressure medication and medication to combat depression and hip pain prior to his arrest. Upon incarceration, Mr. Holland was denied these medications by Tulsa County Jail officials, despite the medications' warnings that abruptly halting use caused severe side effects. One of these severe side effects was increased suicidal tendencies. Destiny Holland requested that the jail provide Mr. Holland his medications, but once again officials at Tulsa County Jail denied Mr. Holland his prescribed medications. Destiny Holland requested the keys to her father's vehicle so she could retrieve Mr. Holland's prescribed medications from his car, but jail officials refused to give her the keys that were in Mr. Holland's property.

3.     Mr. Holland's mental health concerns were also brought to the attention of Tulsa County Jail officials by Mr. Holland's ex-wife, Charlotte Inge. After an evening telephone conversation on November 30, 2013, in which Mr. Holland told her that he could no longer endure the pain, Charlotte Inge immediately contacted Tulsa County Jail and informed officials of her conversation. Again, no concern was shown for Mr. Holland's serious mental condition as officials once again took no action. Defendants chose to ignore Mr. Holland's serious and known mental health and medical needs and even exacerbated the problem by refusing Mr. Holland his prescribed depression and pain medications.

4.     Following the November 30, 2013 phone call, merely hours after being informed, yet again, of Mr. Holland's serious mental health condition, Mr. Holland was left unattended in a jail cell where he hung himself. He was pronounced dead on the morning of December 1, 2013.

5.     Despite the repeated efforts of his family and friends, Mr. Holland was subjected to a culture of deliberate indifference and inadequate treatment of inmate health, specifically inmate mental health. Mr. Holland's death was entirely preventable. Though informed on

several occasions by Mr. Holland's family and friends, Defendants chose to ignore Mr. Holland's mental health needs and his increased suicidal tendencies, which were exacerbated by the denial of his prescribed depression and pain medications.   The policies and customs implemented and/or created by Defendants created a culture of indifference toward the mental health needs of inmates whereby Defendants wholly failed to provide Mr. Holland adequate mental health care and protect Mr. Holland against an obvious risk of harm to himself, given his known mental health condition. This failure to protect him and provide for his mental health and medical needs was a direct and proximate cause of Mr. Holland's death.

## JURISDICTION AND VENUE

6.      The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1343 to secure protection of and to redress deprivations of rights secured by the Eighth Amendment and Fourteenth Amendment to the United States Constitution as enforced by 42 U.S.C. § 1983, which provides for the protection of all persons in their civil rights and the redress of deprivation of rights under color of law.

7.      The jurisdiction of this Court is also invoked under 28 U.S.C. § 1331 to resolve a controversy arising under the Constitution and laws of the United States, particularly the Eighth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

8.      This Court has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. § 1367, since the claims form part of the same case or controversy arising under the United States Constitution and federal law.

9.      Prior to filing this suit, Plaintiff properly notified Defendants of her tort claims as required by the Governmental Tort Claims Act, 51 Okla. Stat. § 156.

10.     Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## PARTIES

11.     Plaintiff Destiny Holland, is a resident of Tulsa County, Oklahoma, and the Special Administrator of the Estate of Mr. Holland.  The survival causes of actions in this matter are based on violations of Mr. Holland's rights under the Eighth and Fourteenth Amendments and Oklahoma State Law.

12.     Defendant Stanley Glanz ("Sheriff Glanz" or "Defendant Glanz") is, and was at all times relevant hereto, the Sheriff of Tulsa County, Oklahoma, residing in Tulsa County, Oklahoma.  Defendant Glanz, as Sheriff and the head of the Tulsa County Sheriff's Department, was, at all times relevant hereto, responsible for ensuring the safety and well-being of inmates detained and housed at the Tulsa County Jail, including the provision of appropriate medical care and treatment to inmates in need of such care, pursuant to 57 O.S. § 47.  In addition, Defendant Glanz is, and was at all times pertinent hereto, responsible for creating, adopting, approving, ratifying, and enforcing the rules, regulations, policies, practices, procedures, and/or customs of the Tulsa County Sheriff's Department and Tulsa County Jail, including the policies, practices, procedures, and/or customs that violated Mr. Holland's rights as set forth in this Complaint. Defendant Glanz is sued in his individual and official capacities.

13.     Defendant Armor Correctional Health Services, Inc. ("ACHS") was, at all pertinent times, a foreign corporation doing business in Tulsa County, Oklahoma. ACHS was, at all times relevant hereto, responsible, in part, for providing medical services and medication to Mr. Holland while he was in the custody of the Sheriff's Department.  ACHS was additionally

4

responsible, in part, for implementing Tulsa County Jail policies regarding medical treatment, assisting in developing those policies and in training and supervising its employees.

14.    The true names and identities of Defendants DOES I through V are presently unknown to Plaintiff.  Plaintiff alleges that each of Defendants DOES I through V were each employed by the Tulsa County Sheriff's Department, Tulsa County Jail, and/or ACHS.  Plaintiff alleges that each of Defendants DOES I through V was deliberately indifferent to Mr. Holland's medical needs and safety, violated his civil rights, negligently and wrongfully caused his death, and/or encouraged, directed, enabled and/or ordered other Defendants to engage in such conduct.

## FACTUAL ALLEGATIONS

15.    Plaintiff re-alleges and incorporates by reference paragraphs 1 through 14, as though fully set forth herein.

16.    Defendants were aware of Mr. Holland's mental health condition, suicidal tendencies and other serious psychological problems well in advance of his untimely death on or about November 30, 2013 and/or December 1, 2013.

17.    During the time period of Mr. Holland's custody in the Tulsa County Jail, Mr. Holland's family and friends repeatedly notified Defendants of Mr. Holland's serious medical and mental health issues, to wit:

a.    Upon Mr. Holland's arrest, his daughter, Destiny Holland informed the arresting officers that Mr. Holland needed his medications and was suicidal.

b.    Once Mr. Holland was taken to Tulsa County Jail, Destiny Holland informed officials at the Tulsa County Jail that Mr. Holland needed his medications and was suicidal.

c.    During his incarceration, Destiny Holland made several attempts to give Mr. Holland his prescribed mediations for blood pressure, depression and pain.  However, each

5

attempt was refused by Tulsa County Jail officials despite warnings that abrupt discontinuance of said medications had severe side effects, specifically including increased suicidal tendencies.

d.      On Saturday evening, during the November 30, 2013 telephone conversation between Mr. Holland and his ex-wife Charlotte Inge, Mr. Holland was severely depressed, stating that he could no longer endure the pain. Although Charlotte immediately contacted Tulsa County Jail officials and advised them of Mr. Holland's statements and suicidal condition, no action was taken.

18.      Despite being repeatedly informed and advised of Mr. Holland's serious medical and mental condition and his suicidal tendencies, Mr. Holland was denied his prescription medications and was not put on suicide watch at any time prior to his death.

19.      Merely hours after what would prove to be the final attempt to obtain adequate mental health care and protection, Mr. Holland hung himself in his cell. He was discovered and pronounced dead on the morning of December 1, 2013.

20.      Information provided by Mr. Holland's family and friends, as well as Mr. Holland's own statements and behavior, put Defendants on notice of excessive risks to Mr. Holland's safety. Instead of responding by providing adequate medical and mental health care and protection from himself, Defendants ignored Mr. Holland's mental condition and failed to provide any care or take any precautions to prevent Mr. Holland from taking his own life.

21.      This deliberate indifference to Mr. Holland's medical and mental health needs was in furtherance of and consistent with the policies that Sheriff Glanz promulgated, created, implemented or possessed responsibility for the continued operation of; and/or the policies that ACHS had the responsibility for implementing and/or establishing procedures, customs and/or patterns and practices.

6

22.   First, Defendants Glanz and ACHS failed to promulgate and implement adequate medical and mental health policies responsive to the serious medical needs of the prisoners in their care.  In particular, during all times pertinent, there were deficient guidelines in place as to the standard of care specific to inmates' mental health needs.  It is common knowledge that mental illness is prevalent in our jails and prisons.  For instance, in 2006, the United States Bureau of Justice Statistics found that the rate of reported mental health disorders in the state prison population is five times greater (56.2%) than in the general adult population (11%).  It is vital that jails and prisons have policies in place establishing the standard of care for nurses and medical staff to follow in order to address this crisis.  The utter lack of guidance for nurses to follow at the Tulsa County Jail as to the standard of care for inmates' mental health demonstrates a failure to train, failure to supervise and deliberate indifference toward known risks to inmates health, safety and lives.

23.   The absence of mental health guidelines and the failure to train and supervise has manifested itself in a pattern and practice of failures to conduct appropriate psychiatric assessments, create and implement appropriate mental health treatment plans, promptly evaluate and transfer to an appropriate psychiatric treatment facility those jail inmates who are a potential danger to themselves, and failure to take precautions to prevent suicide among high risk and mentally ill inmates.

24.   Second, the communication policies and procedures for inmates seeking medical treatment promulgated by Sheriff Glanz and implemented by Defendants are, and for all times relevant were, wholly inadequate to ensure the timely assessment and treatment of inmates with serious medical needs.  ACHS, the Tulsa County Jail and the Tulsa County Sheriff's Department, under the direction of Sheriff Glanz, have a pattern and practice of understaffing its

medical treatment facility. Sheriff Glanz promotes a policy of having too few personnel on duty at the Tulsa County Jail at one time to adequately provide treatment to inmates' serious medical and mental health needs.

25.    Third, Sheriff Glanz restricts ACHS to very tight budgetary restrictions, creating substantial risks to inmate safety.

26.    Sheriff Glanz and ACHS are, and have been, on notice that their policies are inadequate to meet the mental health needs of prisoners like Mr. Holland. Nonetheless, Sheriff Glanz has steadfastly and aggressively refused to reform those policies. Within the last five (5) years, a former director at the Tulsa County Jail, Pamela Hoisington, was terminated for voicing her complaints about the woefully inadequate policies set forth above. Ms. Hoisington actually documented some of her complaints in writing in a judicial letter. However, rather than taking a proactive approach to improve the inadequate policies, Ms. Hoisington, was fired at the direction of Sheriff Glanz for allegedly exposing the Tulsa County Sheriff's Department to litigation.

## CLAIMS FOR RELIEF

### Cruel and Unusual Punishment in Violation of the Eighth and Fourteenth Amendments to the Constitution of the United States (42 U.S.C. § 1983)

**A.    Allegations Applicable to all Defendants.**

27.    Plaintiff re-alleges and incorporates by reference paragraphs 1 through 26, as though fully set forth herein.

28.    Defendants knew or reasonably should have known there was a strong likelihood that Mr. Holland was in danger of serious personal harm and that he would try to harm himself. Mr. Holland had serious and documented mental health issues, including depression and suicidal

thoughts and tendencies, made known to the Defendants at his arrest, upon arrival to the Tulsa County Jail and prior to his death.

29.     Defendants failed to provide an adequate mental health evaluation, timely or adequate treatment and/or adequate supervision for Mr. Holland while he was placed at Jail.

30.     Defendants' acts and/or omissions as alleged herein, including, but not limited to, their failure to provide Mr. Holland with adequate and timely medical or psychiatric care and/or failure to take other measures to protect him from physical harm, constitute deliberate indifference and a reckless disregard to Mr. Holland's serious medical needs, health and safety.

31.     As a direct and proximate result of Defendants' conduct, Mr. Holland experienced physical pain, severe emotional distress, mental anguish, loss of his life, and the damages alleged herein.

32.     The aforementioned acts and/or omissions of Defendants were malicious, reckless and/or accomplished with a conscious disregard of Mr. Holland's rights, thereby entitling Plaintiff to an award of exemplary and punitive damages according to proof.

**B.     Supervisor liability (Defendant Glanz)**

33.     Plaintiff re-alleges and incorporates by reference paragraphs 1 through 32, as though fully set forth herein.

34.     The aforementioned acts and/or omissions of Defendants in being deliberately indifferent to Mr. Holland's serious medical needs, health and safety and violating Mr. Holland's civil rights were the direct and proximate result of customs, practices and policies which Sheriff Glanz promulgated, created, implemented and/or possessed responsibility for.

35.     Such policies, customs and/or practices include, but are not limited to:

a.      Sheriff Glanz's failure to adequately train and supervise medical staff as exemplified by his failure to adopt any policies or guidelines as to the standard of care specific to inmates' mental health needs;

b.      The pattern and practice of understaffing medical personnel at the Tulsa County Jail, leaving inmates vulnerable and increasing the risk of harm;

c.      The tight budgetary restrictions which create substantial risks to inmate safety;

d.      The failure to conduct appropriate psychiatric assessments;

e.      The failure to create and implement appropriate mental health treatment plans;

f.      The failure to promptly evaluate and transfer to an appropriate psychiatric treatment facility jail inmates who are a potential danger to themselves; and

g.      The failure to take precautions to prevent suicide among high risk and mentally ill inmates.

36.     Sheriff Glanz, through his continued encouragement, ratification, and approval of the aforementioned policies, customs, and/or practices, in spite of their known and obvious inadequacies and dangers, has been deliberately indifferent to inmates', including Mr. Holland's, serious medical needs.

37.     The aforementioned customs, policies, and/or practices were a direct and proximate cause of Plaintiff's damages and the death of Mr. Holland in that Sheriff Glanz failed to adequately train and supervise the jail and medical staff and contractors at the Tulsa County Jail to prevent the occurrence of the constitutional violations suffered by Mr. Holland at the Tulsa County Jail. Sheriff Glanz also failed to promulgate appropriate policies, procedures or to take other measures to prevent the constitutional violations suffered by Mr. Holland at the Tulsa County Jail.

38.     As a direct and proximate result of the aforementioned customs, policies, and/or practices, Mr. Holland suffered injuries and damages as alleged herein.

**C.     Municipal Liability ("ACHS")**

39.     Plaintiff re-alleges and incorporates by reference paragraphs 1 through 38, as though fully set forth herein.

40.     ACHS is a "person" for purposes of 42 U.S.C. § 1983.

41.     At all times pertinent hereto, ACHS was acting under color of State law.

42.     ACHS is charged with implementing and assisting in developing the policies of the Tulsa County Sheriff's Department with respect to the medical care of inmates at the Tulsa County Jail and has shared responsibility to adequately train and supervise its employees.

43.     ACHS corporate staff is involved in, and exerts control over, the Jail's mental health program, as administered by medical staff at the Tulsa County Jail.  For instance, ACHS is involved in the management of psychiatric treatment and monitoring psychotropic medication usage at the Jail.  ACHS is also heavily involved in the ongoing evaluation of the Jail's mental health program and involved in the day-to-day management of the program.  ACHS closely monitors the Jail's mental health program and provides consult support, staff coverage, professional development and training and peer review.

44.     The aforementioned acts and/or omissions of Defendants in being deliberately indifferent to Mr. Holland's serious medical needs, health, and safety, and violating Mr. Holland's civil rights were the direct and proximate result of customs, policies, and/or practices of ACHS by and through their employees and/or agents.

45.     Such policies, customs and/or practices include, but are not limited to:

a.     ACHS's failure to adequately train and supervise medical staff as exemplified by the lack of policies/guidelines as to the standard of care specific to inmates' mental health needs;

b.     Understaffing the medical unit;

d.     The failure to conduct appropriate psychiatric assessments;

e.     The failure to create and implement appropriate mental health treatment plans;

f.     The failure to promptly evaluate and transfer to an appropriate psychiatric treatment facility jail inmates who are a potential danger to themselves; and

g.     The failure to take precautions to prevent suicide among high risk, mentally ill inmates.

46.     ACHS tacitly encouraged, ratified, and/or approved of the acts and/or omissions alleged herein, knew that such conduct was unjustified and would result in violations of constitutional rights, and were deliberately indifferent to inmates' serious medical needs.

47.     As a direct and proximate result of the aforementioned customs, policies, and/or practices, Mr. Holland suffered injuries and damages as alleged herein.

**Negligence**
**(Defendants ACHS and Does I through V)** [1]

48.     Plaintiff re-alleges and incorporates by reference paragraphs 1 through 47, as though fully set forth herein.

---

[1]     Plaintiff's tort claims are properly brought against ACHS and their employees and agents. The Oklahoma Supreme Court held in *Sullins v. American Medical Response of Oklahoma, Inc.*, 23 P.3d 259, 264 (Okla. 2001), that private entities such as ACHS are not "entit[ies] designated to act in behalf of the State or political subdivision [which includes a public trust]" for purposes of the exemption under 51 Okla. Stat. § 152(2), merely because they contract with a public trust to provide services which the public trust is authorized to provide. *See also Arnold v. Cornell Companies, Inc.*, 2008 WL 4816507 (W.D.Okla., Oct. 29, 2008). Further, Defendants Does I through V are employees or agents of ACHS and are not individually "under contract with city, county, or state entities who provide medical care to inmates" for the purposes of 51 Okla. Stat. § 152(2).

49.     Defendants owed a duty to Mr. Holland, and all other inmates in custody, to use reasonable care to provide inmates in need of medical attention with appropriate treatment.

50.     Defendants breached that duty by wholly failing to provide Mr. Holland with prompt and adequate medical and psychiatric treatment, despite repeated requests and obvious need.

51.     Defendants' breaches of the duty of care include, *inter alia*: the failure to conduct appropriate psychiatric assessments; the failure to create and implement appropriate mental health treatment plans; the failure to promptly evaluate and transfer Mr. Holland to an appropriate psychiatric treatment facility; and the failure to take precautions to prevent Mr. Holland from taking his own life.

52.     Upon information and belief, Defendant ACHS also breached its duty to Mr. Holland by failing to provide him with proper and appropriate medications.

53.     As a direct and proximate cause of Defendants' negligence, Mr. Holland experienced physical pain, severe emotional distress, mental anguish, loss of life, and the damages alleged herein.

54.     As a direct and proximate cause of Defendants' negligence, Mr. Holland has suffered real and actual damages, including medical expenses, mental and physical pain and suffering, emotional distress, loss of life, lost wages and other damages in excess of Seventy-Five Thousand Dollars ($75,000.00).

## PUNITIVE DAMAGES

55.     Plaintiff re-alleges and incorporates by reference paragraphs 1 through 54, as though fully set forth herein.

56.    Plaintiff is entitled to punitive damages on her claims brought pursuant to 42 U.S.C. § 1983 as Defendants' conduct, acts and omissions alleged herein constitute reckless or callous indifference to Mr. Holland's federally protected rights.

57.    Plaintiff is entitled to punitive damages on her negligence claim as Defendants' conduct, acts and omissions alleged herein constitute reckless disregard for Mr. Holland's rights.

**WHEREFORE**, based on the foregoing, Plaintiff prays that this Court grant her the relief sought, including, but not limited to, actual damages in excess of Seventy-Five Thousand Dollars ($75,000.00), with interest accruing from date of filing of suit, punitive damages in excess of Seventy-Five Thousand Dollars ($75,000.00), reasonable attorney fees, and all other relief deemed appropriate by this Court.

Respectfully Submitted:

Carla R. Stinnett, Esq. OBA No. 19532
Gregory J. Denney, Esq. OBA No. 17918
DENNEY & STINNETT, P.L.L.C.
301 E. DEWEY
SAPULPA, OK 74066
Telephone: (918) 227-1177
Facsimile:  (918) 227-1197
Email: carla@gregdenneylaw.com
       greg@gregdenneylaw.com
**ATTORNEYS FOR PLAINTIFF**